Neil S. Kagan, Michigan Bar #P58948
National Wildlife Federation
Great Lakes Natural Resource Center
213 West Liberty Street, Suite 200
Ann Arbor, Michigan 48104
734-769-3351

Aaron Isherwood, California Bar #184392
Sierra Club
85 Second Street
San Francisco, California 94104
415-977-5680

FILED

02 MAY -3 AM 10:17

RONALD␣WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT MICH.

**Gordon J. Quist
U.S. District Judge**

1:02cv308

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NATIONAL WILDLIFE FEDERATION )<br>Great Lakes Natural Resource Center )<br>213 West Liberty Street, Suite 200 )<br>Ann Arbor, Michigan 48104, )<br>　　　　　　　　　　　　　　　　　　　　)<br>　　and　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　)<br>SIERRA CLUB　　　　　　　　　　　　　)<br>85 Second Street　　　　　　　　　　　　)<br>San Francisco, California 94105,　　　　　)<br>　　　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　Plaintiffs,　　　　)<br>　　　　　　　　　　　　　　　　　　　　)<br>vs.　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　)<br>MERICAM FARMS, LLC　　　　　　　　)<br>11774 Meridian Road　　　　　　　　　　)<br>Waldron, Michigan 49288　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　Defendant.　　　)<br>　　　　　　　　　　　　　　　　　　　　) | CIVIL ACTION NO. _____<br><br>COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF<br><br><br>JUDGE _____<br><br>MAGISTRATE JUDGE _____ |

**COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

1

Plaintiffs National Wildlife Federation and Sierra Club, on behalf of their respective members, allege as follows:

**Introduction**

1. This action arises under and alleges violations of the Federal Water Pollution Control Act, as amended (the "Clean Water Act," the "CWA," or the "Act"), 33 U.S.C. § 1251 *et seq.*, and Part 31, Water Resources Protection, of the Michigan Natural Resources and Environmental Protection Act ("NREPA"), Mich. Comp. Laws ("MCL") § 324.101 *et seq.* Plaintiffs bring this action pursuant to the citizen suit provision of the Act, CWA § 505, 33 U.S.C. § 1365, and MCL § 324.1701.

2. This action concerns repeated discharges of animal waste or other pollutants into waters of the United States by Jelsma Dairy, which is owned and operated by defendant Mericam Farms, L.L.C. ("Mericam Farms"), and also concerns Mericam Farms' failure to obtain a National Pollutant Discharge Elimination System ("NPDES") permit for the source of the discharges—the Jelsma Dairy concentrated animal feeding operation ("CAFO"). Mericam Farms' discharges and failure to obtain an NPDES permit are contrary to §§ 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, 40 C.F.R. §§ 122.1 and 122.23, and similar provisions of Michigan law. *See* MCL §§ 324.3109, 324.3112; Mich. Admin. Code §§ R 323.2104(b), R 323.2106.

3. Plaintiffs seek a declaration that Mericam Farms has violated, and continues to violate, the CWA and NREPA by discharging pollutants into waters of the United States from the Jelsma Dairy CAFO without an NPDES permit. Plaintiffs also seek orders requiring Mericam Farms to pay civil penalties for past and future violations of the CWA and NREPA; enjoining

Mericam Farms from operating the Jelsma Dairy CAFO until it has complied with the CWA and NREPA; and directing Mericam Farms to pay the cost of any environmental restoration or remediation necessary to ameliorate the environmental degradation it has caused.

## Jurisdiction and Venue

4. The court has subject matter jurisdiction over the Clean Water Act claims set forth in this complaint pursuant to 28 U.S.C. § 1331 (federal question), CWA § 505(a)(1), 33 U.S.C. § 1365 (a)(1).

5. On February 6, 2002, plaintiffs sent a letter notifying Mericam Farms and governmental authorities of their intent to sue, in accordance with CWA § 505(b)(1)(A), 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. §§ 135.2, 135.3. Plaintiffs' letter is attached and by this reference incorporated here.

6. More than sixty days have elapsed since plaintiffs sent the notice letter described in ¶ 5.

7. Neither the United States nor the State of Michigan has commenced and diligently prosecuted a civil or criminal action in a court of the United States or a state to redress the violations that are the subject of this complaint.

8. The United States has not commenced an administrative penalty action under CWA § 309(g), 33 U.S.C. § 1319(g), nor has the State of Michigan commenced an administrative penalty action under a comparable state law to redress the violations that are the subject of this complaint.

9. The court has supplemental jurisdiction over plaintiffs' claims under Michigan law pursuant to 28 U.S.C. § 1367.

10. The court is authorized to grant the relief requested by 28 U.S.C § 2201 and Fed. R. Civ. P. 57 (declaratory relief), and by 28 U.S.C. §2202 and Fed. R. Civ. P. 65 (injunctive relief). Michigan law provides for equitable and injunctive relief under MCL § 324.1704(1).

11. Venue is appropriate in this judicial district and court because Mericam Farms and the Jelsma Dairy CAFO are located in Hillsdale County, in the Southern Division of the United States District Court for the Western District of Michigan. *See* CWA § 505(c)(1), 33 U.S.C. § 1365(c)(1).

**Parties**

12. Plaintiff National Wildlife Federation ("NWF") is a nonprofit corporation organized and existing under the laws of the District of Columbia. NWF is the largest citizen-supported conservation advocacy and education organization in the United States, with affiliate organizations and members across the nation, including Michigan. NWF works actively on behalf of its members to maintain and enhance the quality of the nation's waters, including waters under Michigan's jurisdiction. This work is a priority for NWF nationally and in the Great Lakes region.

13. Plaintiff Sierra Club ("Sierra Club") is a nonprofit corporation organized and existing under the laws of California, with approximately 700,000 members in sixty-three chapters nationally, approximately 20,000 residing in Michigan. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; practicing and promoting the responsible use of the Earth's resources and ecosystems; educating and enlisting humanity to protect and restore the quality of the natural and human environment; and using all lawful means to carry out these objectives. The Sierra Club works actively on behalf of its members to

4

maintain and enhance the quality of the nation's waters, including waters under Michigan's jurisdiction. One of Sierra Club's national priorities is the protection of the environment, including but not limited to surface water and groundwater, from pollution by CAFOs.

14. Plaintiffs' particular interests in this case stem from the past, present, and future harm to the environment caused by or threatened by Mericam Farms' violations of the Clean Water Act and NREPA. One or more NWF and Sierra Club members reside in, work in, or regularly visit, use, and enjoy the area affected by the discharges from the Jelsma Dairy CAFO. Plaintiffs' members have aesthetic and health interests in keeping the waters and adjacent lands in the vicinity of the Jelsma Dairy CAFO, as well as the waters and adjacent lands affected by the downstream migration of the CAFO's discharges, free of animal manure and other pollutants. The Jelsma Dairy CAFO's discharge of pollutants into those waters in violation of the Clean Water Act and NREPA has, is, or will adversely affect those members' interests. Plaintiffs bring this action on behalf of their members. The interests of plaintiffs' members fall within the zone of interests protected under the Clean Water Act.

15. Defendant Mericam Farms, a Michigan limited liability corporation, is located at 11774 Meridian Road, Waldron, Michigan. Mericam Farms maintains the Jelsma Dairy, whose address is both 11774 Meridian Road and 14650 East Camden Road, both in Waldron, Michigan.

## Legal Framework

16. Plaintiffs allege violations of the federal Clean Water Act, as well as NREPA.

17. Congress passed the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the nation's waters." CWA § 101(a), 33 U.S.C. § 1251(a).

5

18. To achieve the goal of eliminating the discharge of pollutants into navigable waters, Congress created the National Pollutant Discharge Elimination System ("NPDES"). Section 301 of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source into waters of the United States unless that point source receives an NPDES permit from the U.S. Environmental Protection Agency ("EPA"), or a state agency authorized to grant NPDES-equivalent permits. *See also* 33 U.S.C. § 1342.

19. The term "discharge of pollutants" means "any addition of any pollutant to navigable waters from any point source." CWA § 502(12), 33 U.S.C. § 1362(12). The term "navigable waters" means "the waters of the United States," which include intrastate lakes, rivers, streams, and intermittent streams. CWA § 502(7), 33 U.S.C. § 1362(7); *see* 40 C.F.R. § 122.2.

20. NREPA, like the CWA, outlaws the discharge of pollutants by any point source into Michigan waters without a permit issued by the Michigan Department of Environmental Quality ("MDEQ"). MCL §§ 324.3109, 324.3112; Mich. Admin. Code R. 323.2106.

21. To obtain any federal permit or license (including an NPDES permit), CWA § 401, 33 U.S.C. § 1341, requires any applicant for "a Federal license or permit to conduct any activity including but not limited to, the construction or operation of facilities which may result in any discharge into the navigable waters" to provide the permitting agency with a certification from the state in which the applicant is located stating that the activity sought to be permitted complies with the state's water quality standards ("water quality certification").

22. The Michigan Administrative Code echoes the water quality certification requirement in Mich. Admin. Code R. 323.2138, which requires MDEQ to verify that discharges authorized by a permit will not violate applicable water quality standards. Michigan water quality standards

6

require the protection of all surface waters of the state for designated uses, including public water supply, fisheries, other indigenous aquatic life and wildlife, and body contact recreation. Mich. Admin. Code R. 323.1100. These standards include requirements that the waters of the state shall not have unnatural physical properties in quantities injurious to designated uses, Mich. Admin. Code R. 323.1050, and shall contain no taste-producing or odor-producing substances in concentrations that would impair their use, Mich. Admin. Code R. 323.1055. In addition, plant nutrients must be limited to prevent the stimulation of growth of plants, fungi, or bacteria injurious to designated uses. Mich. Admin. Code R. 323.1060.

23. Both federal and state regulations define CAFOs as point sources subject to the provisions of the CWA and NREPA. *See* 40 C.F.R. §§ 122.23, 122.25(6); Mich. Admin. Code Rs. 323.2104(b), 323.2106.

24. State and federal regulations provide for public notice of a draft NPDES permit, as well as an opportunity for public comment. *See* 40 C.F.R. 124.10 *et seq.*; Mich. Admin. Code Rs. 323.2117, 323.2119, 323.2130. Members of the public may also request a public hearing on an NPDES permit application. 40 C.F.R. 124.10 *et seq.*

### Factual Background

25. The Jelsma Dairy CAFO confines and maintains approximately 590 mature dairy cattle in a lot or facility for a total of 45 days or more in any 12-month period, and does not sustain crops, vegetation forage growth, or post-harvest residues in the normal growing season over any portion of the lot or facility.

26. The Jelsma Dairy CAFO is located within one mile of Lime Creek.

27. Toad Creek, a tributary of Lime Creek, supports native freshwater mussels.

28. Lime Creek flows into Bean Creek, which flows through Morenci, Michigan. In Morenci, Riverside Park along Bean Creek supports an unusual association of native shrubs, including bladdernut (*Staphylea trifolia*), wafer ash (*Ptelea trifoliata*), and eastern Wahoo (*Euonymus atropurpureus*). Bean Creek later flows into Ohio. There, Bean Creek joins the Tiffin/Maumee Rivers, entering Lake Erie at Toledo, Ohio. Archbold, Ohio, among other communities, draws its drinking water from the Bean/Tiffin/Maumee watershed.

29. The Jelsma Dairy CAFO has operated since 1999 and continues to operate without an NPDES permit or an NREPA permit.

30. On or about February 21, 2001, the Jelsma Dairy CAFO discharged pollutants into the Bennett Drain, which flows into Lime Creek, as a result of applying the pollutants to adjoining land.

31. On or about March 1, 2001, the Jelsma Dairy CAFO discharged runoff from calf rearing operations to a standing pool of water, which flows into a tile line and then into a tributary drain to Lime Creek.

32. On or about March 1, 2001, the Jelsma Dairy CAFO discharged runoff from uncontained silage piles and manure to a standing pool of water, which flows into a tile line and then into a tributary drain to Lime Creek.

33. On or about November 30, 2001, the Jelsma Dairy CAFO discharged pollutants into Oats Drain, which flows into Toad Creek, which flows into Lime Creek, as a result of applying the pollutants to adjoining land.

34. None of the discharges referenced in paragraphs 30 through 33, above, were the result of catastrophic flooding from a 25-year, 24-hour extreme storm event, as defined in 40 C.F.R. § 122, Appendix B.

35. The Jelsma Dairy CAFO's land application practices and discharges demonstrate a continuing pattern of pollution that degrades and threatens the waters of the United States.

### First Claim for Relief

(Discharge of Pollutants without An NPDES Permit)

36. Plaintiffs re-allege each and every allegation contained in paragraphs 1-35, above.

37. On each occasion alleged in paragraphs 30-33, above, Mericam Farms violated the Clean Water Act and its implementing regulations by discharging pollutants from the Jelsma Dairy CAFO directly, or through a manmade ditch, flushing system, or other similar man-made device, into waters of the United States without an NPDES permit.

38. Taken together, the discharges by the Jelsma Dairy CAFO described in paragraphs 30-33, above, demonstrate an ongoing pattern of pollution.

39. Incidents similar to discharges of pollutants by the Jelsma Dairy CAFO described in paragraphs 30-33, above, are likely to recur in the future.

### Second Claim for Relief

(Failure to Obtain an NPDES Permit)

40. Plaintiffs re-allege each and every allegation contained in paragraphs 1-39, above.

41. Mericam Farms violated, and continues to violate, the Clean Water Act and its implementing regulations by failing to provide a water quality certification or to obtain an NPDES permit prior to operating the Jelsma Dairy CAFO.

### Third Claim for Relief

(Discharge of Injurious Substances into State Waters)

42. Plaintiffs re-allege each and every allegation contained in paragraphs 1-41, above.

43. On each occasion alleged in paragraphs 30-33, above, Mericam Farms violated NREPA by directly or indirectly discharging into the waters of the state one or more substances that are or may become injurious to one or more of the following: the public health, safety, or welfare; domestic, commercial, industrial, agricultural, recreational, or other uses that are being made or may be made of such waters; the value or utility of riparian lands; livestock, wild animals, birds, fish, aquatic life, or plants or to their growth, propagation, or value.

44. Mericam Farms is likely to or will continue to violate NREPA as alleged in paragraph 43, above.

### Fourth Claim for Relief

(Discharge of Waste or Waste Effluent without an NREPA Permit)

45. Plaintiffs re-allege each and every allegation contained in paragraphs 1-44, above.

46. Mericam Farms violated, and continues to violate, NREPA and its implementing regulations by discharging waste or waste effluent from the Jelsma Dairy CAFO without an NREPA permit.

### Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A. Adjudge and declare that Mericam Farms has violated and continues to violate the Clean Water Act and NREPA as alleged in the first, second, third, and fourth claims for relief, above.

B. Enjoin Mericam Farms from operating the Jelsma Dairy CAFO until it applies for and obtains NPDES and NREPA permits.

C. Enjoin Mericam Farms from operating the Jelsma Dairy CAFO in a way that violates the Clean Water Act and NREPA.

D. Order Mericam Farms to pay civil penalties of up to $27,500 per day of violation, pursuant to CWA §§ 309(d) and 505(a), 33 U.S.C. §§1319(d) and 1365(a), 40 C.F.R. §§ 19.2 and 19.4, and MCL § 324.3115, including those enumerated in plaintiffs' notice letters, those identified during discovery, and those committed after the violations alleged in this complaint;

E. For a period beginning on the date of the Court's order and running for five years after Mericam Farms achieves compliance with the Clean Water Act and NREPA, order Mericam Farms to simultaneously send to plaintiffs a copy of all reports and other documents which Mericam Farms submits to EPA, to the Regional Administrator of the EPA, the MDEQ, or to the State of Michigan regarding Mericam Farms' discharges or CWA or NREPA;

F. For a period beginning on the date of the Court's order and running for five years after Mericam Farms achieves compliance with the Clean Water Act and NREPA, order Mericam Farms to allow plaintiffs to inspect the Jelsma Dairy CAFO quarterly, on any business day, upon providing Mericam Farms twenty-four hours' notice;

G. Issue a remedial injunction ordering Mericam Farms to pay the cost of any environmental restoration or remediation deemed necessary and proper by the Court to comply with the Clean Water Act and ameliorate the environmental degradation caused by Mericam Farms' violations;

H. Adjudicate the impact of Mericam Farms' conduct on the water or other natural resources, and on the public trust in those resources, and issue a remedial injunction imposing conditions on Mericam Farms requiring it to protect the water, other natural resources, and the public trust in these resources from pollution, impairment, or destruction, as authorized by MCL § 324.1704;

I. Award plaintiffs their costs and other expenses, including reasonable attorney and expert witness fees, as authorized by 33 U.S.C. §1365(d); and

J. Grant plaintiffs such additional and further relief as the Court deems just and proper.

Respectfully submitted,

/s/                                                          /s/ as authorized for
_____        _____
Neil S. Kagan, Michigan Bar #P58948         Aaron Isherwood, California Bar #184392
Counsel for Plaintiffs                                Co-counsel for Plaintiff Sierra Club
National Wildlife Federation                    Sierra Club
Great Lakes Natural Resource Center     85 Second Street
213 West Liberty Street, Suite 200          San Francisco, California 94105
Ann Arbor, Michigan 48104                    415-977-5680
734-769-3351

DATED May 3, 2002

12